**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETIMAT DUDURKAEWA, *individually and on behalf of all others similarly situated*, | Case No. 1:24-cv-10891-MJJ |
| Plaintiff, | |
| v. | |
| R3 EDUCATION INC., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PURSUANT TO RULE 12(b)(1) and 12(b)(6)**

296222240v.2

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................ 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS .................................................... 1

LEGAL STANDARD ................................................................................................... 2

ARGUMENT ................................................................................................................. 3

      I.     Plaintiff lacks Article III standing ........................................................... 3

            A.     Article III standing in data breach cases in the First Circuit ...................... 4

            B.     Plaintiff does not allege an injury in fact and thus lacks standing to seek damages ...................................................................................... 6

                  1.     Increased risk of future identity theft or fraud .............................. 6

                  2.     Lost time, inconvenience responding to, and anxiety related to the Incident ........................................................................ 7

                  3.     Diminution in value of PII/PHI ........................................................ 7

                  4.     Increased spam ................................................................................. 8

             C.     Plaintiff also lacks standing to seek injunctive relief ................................. 8

      II.     Plaintiff's Complaint fails to state a claim ............................................ 10

            A.     Choice of law ................................................................................... 10

             B.     Plaintiff fails to allege actual damages, an essential element of her negligence claim ...................................................................... 11

                  1.     Lost time, annoyance, and risk of future harm ............................. 12

                  2.     Diminished Value of PII ................................................................. 13

                  3.     Anxiety ........................................................................................... 13

                  4.     Increased spam ............................................................................... 13

             C.     Plaintiff's negligence claim is barred by the economic loss doctrine ....... 14

            D.     Negligence per se is not recognized as a cause of action ......................... 15

- i -

E.      Plaintiff's breach of confidence claim is deficiently pleaded ................... 15

F.      Plaintiff does not allege a viable breach of fiduciary duty claim ............. 16

G.     Plaintiff does not allege a valid breach of implied contract claim............ 17

H.     Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails ................................................................................... 19

I.      Plaintiff does not viably plead that R3 Education was unjustly enriched............ 19

CONCLUSION.................................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................2

*In re Banner Health Data Breach Litig.*,
   No. CV-16-02696-PHX-SRB, 2017 U.S. Dist. LEXIS 221534 (D. Ariz. Dec.
   20, 2017) ...................................................................................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................2, 3

*Bergin v. Dartmouth Pharm., Inc.*,
   326 F. Supp. 2d 179 (D. Mass. 2004) ......................................................................10

*Blood v. Labette Cty. Med. Ctr.*,
   No. 5:22-cv-04036-HLT-KGG, 2022 U.S. Dist. LEXIS 191922 (D. Kan. Oct.
   20, 2022) .....................................................................................................................8

*In re Capital One Consumer Data Sec. Breach Litig.*,
   488 F. Supp. 3d 374 (E.D. Va. 2020) ...................................................................7, 13

*Carlsen v. GameStop, Inc.*,
   833 F.3d 903 (8th Cir. 2016) ...................................................................................20

*CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*,
   198 Ariz. 173, 7 P.3d 979 (App. 2000)....................................................................11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...........................................................................................3, 6, 7

*Cohen v. McDonnell Douglas Corp.*,
   389 Mass. 327, 450 N.E.2d 581 (Mass. 1983).........................................................10

*Connors v. Howard Johnson Co.*,
   30 Mass. App. Ct. 603, 571 N.E.2d 427 (1991) ......................................................15

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
   455 Mass. 458, 918 N.E.2d 36 (2009) .....................................................................14

*CVS Pharmacy, Inc. v. Bostwick*,
   251 Ariz. 511, 494 P.3d 572 (2021).........................................................................11

*Donovan v. Philip Morris USA, Inc.*,
    455 Mass. 215, 914 N.E.2d 891 (2009) ...................................................................11

*Dudurkaewa v. Midfirst Bank*,
    No. 1: 2024-cv-10186 (D. Mass. after transfer from W.D. Okla.) .........................10

*Durgan v. U-Haul, Int'l Inc.*,
    No. CV-22-01565-PHX-MTL, 2023 U.S. Dist. LEXIS 131177 (D. Ariz. July
    28, 2023) .......................................................................................................13, 18

*FMR Corp v. Boston Edison Co.*,
    415 Mass. 393, 613 N.E.2d 902 (1993) ...................................................................14

*Fratus v. Republic W. Ins. Co.*,
    147 F.3d 25 (1st Cir. 1998) .....................................................................................10

*In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*,
    76 F. Supp. 3d 294 (D. Mass. 2015) .......................................................................10

*Gannon v. Truly Nolen of Am. Inc.*,
    No. CV 22-428-TUC-JAS, 2023 U.S. Dist. LEXIS 181410 (D. Ariz. Aug. 31,
    2023) .......................................................................................................................11, 19

*In re GM LLC Ignition Switch Litig.*,
    339 F. Supp. 3d 262 (S.D.N.Y. 2018) ....................................................................12

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018) ....................................................................20

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021) ...............................................................11, 12, 15, 18

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    2010 ME 93, 4 A.3d 492 (Me. 2010) .......................................................................12

*Hartigan v. Macy's, Inc.*,
    501 F. Supp. 3d 1 (D. Mass. 2020) .......................................................................5, 7

*Harvard Apparatus, Inc. v. Cowen*,
    130 F. Supp. 2d 161 (D. Mass. 2001) .....................................................................15

*Hochendoner v. Genzyme Corp.*,
    823 F.3d 724 (1st Cir. 2016) .....................................................................................2

*Hopkinton Friendly Serv., Inc. v. Global Cos. LLC*,
    490 F. Supp. 3d 421 (D. Mass. 2020) .....................................................................19

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016) ................................................................20

*Jupin v. Kask*,
447 Mass. 141, 849 N.E.2d 829 (2006) ...............................................................11

*Keck v. Jackson*,
122 Ariz. 114, 593 P.2d 668 (1979)....................................................................13

*Kingen v. Warner Norcross + Judd LLP*,
No. 1:22-cv-01126, 2023 U.S. Dist. LEXIS 222175 (W.D. Mich. Sep. 28,
2023) .....................................................................................................................18

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021) ................................................................8

*Lev v. Beverly Enters.-Massachusetts*,
457 Mass. 234, 929 N.E.2d 303 (2010) ...............................................................15

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005)................................................................................17

*Nancy P. v. D'Amato*,
401 Mass. 516, 517 N.E.2d 824 (Mass. 1988)......................................................13

*Payton v. Abbott Labs*,
386 Mass. 540, 437 N.E.2d 171 (Mass. 1982)......................................................13

*Portier v. NEO Tech. Sols.*,
No. 3:17-cv-30111-TSH, 2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31,
2019) .....................................................................................................................11

*In re Practicefirst Data Breach Litig.*,
No. 1:23-CV-00790(JLS/MJR), 2022 U.S. Dist. LEXIS 19272 (W.D.N.Y.
Feb. 1, 2022) ..........................................................................................................8

*Prudential Ins. Co. v. Pochiro*,
153 Ariz. 368, 736 P.2d 1180 (Ct. App. 1987).....................................................15

*Quintero v. Metro Santurce, Inc.*,
No. 20-cv-01075, 2021 U.S. Dist. LEXIS 237071 (D.P.R. Dec. 9, 2021) ...............5

*Reidy v. UMass Mem'l Med. Ctr., Inc.*,
No. 2085-01101, 2021 Mass. Super. LEXIS 1660 (June 17, 2021) .......................14

*Rivera-Marrero v. Banco Popular de Puerto Rico*,
No. 22-cv-01217, 2023 U.S. Dist. LEXIS 57307 (D.P.R. Mar. 31, 2023) ...........5, 6

*Savidge v. Pharm-Save, Inc.*,
   No. 3:17-CV-00186-TBR, 2017 U.S. Dist. LEXIS 197635 (W.D. Ken. Dec. 1,
   2017) ..................................................................................................................................11

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   409 Mass. 514, 567 N.E.2d 912 (1991) ............................................................................14

*Shaoguang Li v. Off. of Transcription Servs.*,
   63 N.E.3d 64 (Mass. App. Ct. 2016) .................................................................................15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..........................................................................................................2, 3

*Squeri v. Mount Ida Coll.*,
   954 F.3d 56 (1st Cir. 2020) ...............................................................................................16

*Standard Chtd. PLC v. Price Waterhouse*,
   190 Ariz. 6, 945 P.2d 317 (Ct. App. 1996) .......................................................................17

*In re: SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) .............................................................................................11

*In re: SuperValu, Inc., Customer Data Sec. Breach Litig.*,
   No. 14-MD-2586 ADM/TNL, 2018 U.S. Dist. LEXIS 36944 (D. Minn. Mar.
   7, 2018) ..............................................................................................................................11

*T.F. v. B.L.*,
   442 Mass. 522, 813 N.E.2d 1244 (Mass. 2004).................................................................17

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ..........................................................................15, 20

*Taylor v. UKG*,
   No. 22-cv-11168-ADB, 2023 U.S. Dist. LEXIS 216280 (D. Mass. Sep. 15,
   2023) ...............................................................................................................4, 5, 7, 13

*Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.*,
   2023 U.S. Dist. LEXIS 35347 (D. Mont. Mar. 2, 2023).....................................................18

*In re TJX Companies Retail Sec. Breach Litig.*,
   564 F.3d 489 (1st Cir. 2009) .........................................................................................14, 15

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................................2, 3, 4, 9

*UBS Fin. Servs., Inc. v. Aliberti*,
   483 Mass. 396, 133 N.E.3d 277 (2019) .............................................................................16

296222240v.2

*Warth v. Seldin,*
  422 U.S. 490 (1975) ..................................................................................................2

*Webb v. Injured Workers Pharmacy, LLC,*
  No. 22-cv-10797, 2023 U.S. Dist. LEXIS 161097 (D. Mass. Sep. 11, 2023) ................ *passim*

*Weekes v. Cohen Cleary P.C.,*
  No. 23-10817-NMG, 2024 U.S. Dist. LEXIS 47673 (D. Mass. Mar. 15, 2024) .........17, 18, 19

*Welborn v. IRS,*
  218 F. Supp. 3d 64 (D.D.C. 2016) ..........................................................................8

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ..................................................................................................3

*Yershov v. Gannet Satellite Info. Network, Inc.,*
  204 F. Supp. 3d 353 (D. Mass. 2016) ......................................................................3

**Rules**

Rule 12(b)(6) ..................................................................................................................2

## INTRODUCTION

Plaintiff's Complaint relates to a cyberattack that Defendant R3 Education Inc. ("R3 Education") experienced in November 2023 (the "Incident"). R3 Education is the parent company of three medical schools located in the Caribbean. Plaintiff alleges she is a former student at one of these schools. She does not allege that any of her personal information has been misused or that she has incurred any identity theft, fraud or out of pocket costs as a result of the Incident. Rather, her primary claim is that she is at an increased risk of harm in the form of identity theft or fraud.

The Complaint fails as a matter of law and should be dismissed in its entirety. As a threshold matter, Plaintiff fails to allege facts sufficient to confer standing. Courts in the First Circuit have consistently held that plaintiffs in data breach cases who do not allege actual misuse of their personal information, like Plaintiff, lack standing to pursue damages. Nor does Plaintiff allege facts sufficient to support standing for injunctive relief, as she fails to allege an imminent risk that R3 Education will again be the victim of cyberattack. Even in Plaintiff had standing, all of her causes of action fail to state a claim.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

R3 Education is the parent company of three medical schools in the Caribbean. Plaintiff is a former student. Doc. No. 1 at ¶ 25. Plaintiff alleges that she was required to provide R3 Education with her private information, including her name, date of birth, driver license/government-issued identification, medical information, and health information. Doc. No. 1 at ¶ 26.

On November 7, 2023, an unauthorized third party gained access to R3's computers systems and encrypted information stored on its system. Doc. No. 1 at ¶ 50. In doing so, the unauthorized party had access to putative class member's protected health information (PHI) and personally identifiable information (PII). Doc. No. 1 at ¶ 49. Plaintiff alleges she received notice

- 1 -

of the Incident via letter on March 25, 2023. Doc. No. 1 at ¶ 4.

Plaintiff asserts seven causes of action and alleges the following purported injuries: (1) lost time spent dealing with the consequences of the Incident, such as self-monitoring her accounts and credit reports; (2) diminution in the value of her PHI/PII; (3) "annoyance, interference, and inconvenience"; (4) anxiety and increased concerns for the loss of privacy; (5) increased spam calls, texts, and/or emails; and (6) an increased risk of fraud, identity theft, and misuse of her PHI/PII. Doc. No. 1 at ¶¶ 20-23; 31. Plaintiff also alleges she *anticipates* spending time and money to try to mitigate the harms caused by the Incident. Doc. No. 1 at ¶ 33. Plaintiff also seeks injunctive relief. Doc. No. 1 at p. 45.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing sufficient facts to plausibly demonstrate standing. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). "[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). In a putative class action, the named representatives must personally allege that they have standing to sue. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975). Further, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. "Dismissal is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material elements necessary to sustain recovery under some actionable legal theory." *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 358 (D. Mass. 2016) (cleaned up).

## ARGUMENT

Plaintiff does not allege that any of her personal data has been misused or that she has suffered any out of pocket costs as a result of the Incident. Instead, Plaintiff's claim is based on the speculative possibility that she may, at some time indeterminate in the future, be a victim of fraud or identity theft as a result of the Incident. Such allegations are not sufficient to satisfy the injury in fact element of Article III standing.

### I.   **Plaintiff lacks Article III standing**

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (internal quotations omitted). To demonstrate standing, a plaintiff must "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203.

This case, like many data breach class actions, turns on whether Plaintiff has sustained an "injury in fact". To qualify as an injury in fact, an injury must be "concrete," *i.e.*, "it must actually exist." *Spokeo*, 578 U.S. at 340. As the Court in *TransUnion* succinctly put it: "No concrete harm, no standing." *TransUnion*, 141 S. Ct. at 2200. "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). While a threatened

- 3 -

injury that is "sufficiently imminent and substantial" may satisfy the concrete-harm requirement for a claim for injunctive relief, the risk of future injury alone—not matter how imminent—is not enough to support Article III standing in a suit for damages. *TransUnion*, 141 S. Ct. at 2198-2199.

### A.   Article III standing in data breach cases in the First Circuit

Courts in the First Circuit have consistently refused to find standing in data breach class actions where no named plaintiff alleges actual misuse of their data. *Webb v. Injured Workers Pharm.* was the first case data breach class action decided by the First Circuit following *TransUnion*. 72 F.4th 365 (1st Cir. 2023). In *Webb*, defendant, a home-delivery pharmacy service, was the victim of a cyberattack in which hackers gained access to and stole the PII of defendant's patients, including names and Social Security numbers. *Id*. at 370. Plaintiffs Webb and Charley, patients of defendant, filed a class action seeking damages and injunctive relief. *Id*. at 371.

Addressing whether Webb had standing to pursue damages, the court concluded that allegations that her stolen PII was used to file a fraudulent tax return sufficed to state a concrete injury under Article III. *Id*. at 373. As for Charley, the court recognized that she did not allege "actual misuse" of her PII. *Id.* at 374. The court concluded, however, that Webb's allegations of "actual misuse" of her data exposed in the breach was sufficient to show that there was an "imminent and substantial risk of future misuse" of Charley's personal information given the same breach was at issue. *Id*. at 375. This "imminent and substantial risk of future misuse," in combination with plaintiff's lost time responding to the data breach constituted a concrete injury. *Id*. at 376. As discussed further below, the court found plaintiffs lacked standing to pursue injunctive relief because the relief they requested was not likely to redress their alleged injuries— which plaintiffs identified as the risk of another data breach. *Id*. at 378.

In *Taylor v. UKG*, a data breach class action decided shortly after *Webb*, plaintiffs alleged

- 4 -

that their personal information, including their Social Security numbers, were exposed to hackers. No. 22-cv-11168-ADB, 2023 U.S. Dist. LEXIS 216280, at *17 (D. Mass. Sep. 15, 2023). But none of the *Taylor* plaintiffs alleged misuse of their information. *Id*. Rather, plaintiffs argued that their allegations of an increased risk of identity theft was sufficient to establish an injury in fact and, in turn, standing. *Id*. at *13. The court rejected this argument and held that because plaintiffs did not allege actual misuse of their information, they did not sustain a concrete injury and thus lacked standing to pursue damages. *Id*. at *22.

The *Taylor* court relied on several federal district courts within the First Circuit which held that plaintiffs must allege actual misuse of their data to plead an injury in fact. *See Rivera-Marrero v. Banco Popular de Puerto Rico,* No. 22-cv-01217, 2023 U.S. Dist. LEXIS 57307, at *33 (D.P.R. Mar. 31, 2023) ("[T]he Court is reluctant to find standing in a data breach case where actual misuse of PII is not alleged. If the Court must draw a line, it will do so here: mere allegations that PII was accessed and exfiltrated in a data breach, without more, are insufficient to constitute a concrete or imminent injury for standing purposes."); *Quintero v. Metro Santurce, Inc*., No. 20-cv-01075, 2021 U.S. Dist. LEXIS 237071, at *15 (D.P.R. Dec. 9, 2021) (alleging that hacker accessed and "encrypted" data stolen from a hospital's server, to hold it for ransom, "equals acquisition and misuse – is a bridge too far, mere speculation, and is not in accord with the modern trend in this area of law"); *Hartigan v. Macy's, Inc.*, 501 F. Supp. 3d 1, 5 (D. Mass. 2020) (no substantial risk of future harm where there were "no allegations of any fraudulent use or even attempted use of the personal information to commit identify theft" with respect stolen information). The *Taylor* court also distinguished its facts from *Webb*, noting that in *Webb* at least one plaintiff alleged actual misuse of her personal information. 2023 U.S. Dist. LEXIS 216280, at *16.

In addition to their increased risk of identity theft argument, the *Taylor* plaintiffs also

alleged the following injuries: 1) costs of taking steps in response to the data breach; 2) a loss of privacy; and 3) lost value to their PII. *Id*. at *19. The court rejected all of these theories. *Id* at *19-22. Regarding time and costs responding to the breach, the court reiterated that absent any actual misuse of plaintiffs' PII there was no imminent or substantial risk of future harm. *Id*. at *20. Absent an imminent or substantial risk of future harm, any time or costs associated with responding to the breach failed to amount to an independent injury sufficient to confer standing. *Id*. at *19-20 (citing *Clapper*, 568 U.S. at 416 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.")). The court then rejected the notion that plaintiffs' alleged "loss of privacy" constituted a standalone injury or that alleged lost value of their PII was sufficient to confer standing. *Id*. at *20-21.

### B.  Plaintiff does not allege an injury in fact and thus lacks standing to seek damages

As in *Taylor*, Plaintiff's complaint does not allege any actual fraud or misuse of her PII/PHI. She relies on generic, speculative injuries, such as an increased risk of identity theft or fraud, lost time and inconvenience dealing with the Incident, lost value of her PHI/PII, and increased spam to demonstrate standing. Doc. No. 1 at ¶¶ 20-23. Numerous courts in this Circuit and across the country have held that such allegations do not constitute an injury in fact.

#### 1.  *Increased risk of future identity theft or fraud*

*Taylor* and other courts in this Circuit have rejected the notion that the mere risk of future harm absent some actual misuse of a plaintiff's personal information is enough to confer standing. *Id*. at *16-17; *Rivera-Marrero*, 2023 U.S. Dist. LEXIS 57307, at *11 ("To this Court's knowledge, no court in this circuit has found standing in a case premised on an allegation of an increased risk of future injury due [to] a data breach of PII where the plaintiff does not allege any actual misuse of their PII."). Here, Plaintiff does not allege that her PII/PHI was misused. Therefore, Plaintiff's

- 6 -

alleged risk of future harm from identity theft or fraud does not amount to an injury in fact.

   2.   *Lost time, inconvenience responding to, and anxiety related to the Incident*

   For the same reasons set forth in *Taylor*, Plaintiff's allegations of lost time and the inconvenience and purported anxiety of dealing with the Incident do not amount to an injury in fact. The Supreme Court has firmly established that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of a hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. *Taylor*, citing *Clapper*, explained that "[w]here, as here, Plaintiffs have not shown an imminent risk of identity theft, prophylactic costs to mitigate such a risk do not constitute an independent injury sufficient to support standing." *Taylor*, 2023 U.S. Dist. LEXIS 216280, at *20.

   Consistent with *Taylor* and *Clapper*, the First Circuit, in another data breach case, held that plaintiff's purchasing of credit monitoring services was not "premised on a reasonably impending threat" and did not constitute an injury in fact. *Hartigan*, 501 F. Supp. 3d at 6. Plaintiff here does not allege she even purchased credit monitoring services after learning of the Incident.

   Because Plaintiff has not alleged any actual misuse of her information, she cannot demonstrate that there is an imminent or substantial risk of future harm. Absent an imminent or substantial risk of future harm, her purported efforts responding to the Incident cannot amount to an injury in fact. *Clapper*, 568 U.S. at 416; *Taylor*, 2023 U.S. Dist. LEXIS 216280, at *20.

   3.   *Diminution in value of PII/PHI*

   "Courts have consistently rejected allegations that the diminution in value of personal information can support standing." *Taylor*, 2023 U.S. Dist. LEXIS 216280, at *22 (cleaned up) (collecting cases); *Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020) (collecting cases). Courts are rightly skeptical that an individual's personal information

- 7 -

has independent monetary value. *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016). Yet, even assuming Plaintiff's PII/PHI has monetary value, Plaintiff has not alleged facts explaining how its value was diminished due to the incident. *Id.*

### 4. Increased spam

Plaintiff alleges, "upon information and belief," that she has received increased spam calls, texts, and/or emails due to the Incident. Doc. 1 at ¶ 31. Courts repeatedly hold that "inconvenient disruptions (such as spam calls, texts, and emails) do not constitute an injury in fact." *In re Practicefirst Data Breach Litig.*, No. 1:23-CV-00790(JLS/MJR), 2022 U.S. Dist. LEXIS 19272, at *5 n.8 (W.D.N.Y. Feb. 1, 2022)), adopted by district court, 2022 U.S. Dist. LEXIS 137188 (collecting cases finding unsolicited spam insufficient to constitute an injury in fact).

Even if an increase in spam were sufficient to establish an injury in fact, Plaintiff has not met the traceability element of standing because she has not alleged that her personal phone number or email address were accessed as part of the Incident. Doc. No. 1 at ¶ 26. Courts addressing similarly deficient allegations have found that an alleged increase in spam cannot be causally linked to the specific data breach when there were (1) no allegations that plaintiffs' phone numbers or emails were stolen and (2) no allegation that plaintiffs' phone numbers or email addresses were unlisted or otherwise protected. *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 993 (W.D. Okla. 2021); *Blood v. Labette Cty. Med. Ctr.*, No. 5:22-cv-04036-HLT-KGG, 2022 U.S. Dist. LEXIS 191922, at *15 (D. Kan. Oct. 20, 2022).

### C. Plaintiff also lacks standing to seek injunctive relief

In addition to money damages, Plaintiff seeks injunctive relief, primarily consisting of improvements to Defendants' data security practices, presumably to help protect from any future cyberattacks. Doc. No. 1 at p. 45. As the First Circuit explained in *Webb*, "standing for injunctive

- 8 -

relief depends on whether the plaintiffs are likely to suffer future injury." 72 F.4th at 378. Here, Plaintiff has failed to allege that there is an "imminent" risk that her data stored by R3 Education will again be targeted or exposed. Further, the requested relief would not redress Plaintiff's alleged injuries—which relate entirely to the previous Incident and which Plaintiff does not plausibly allege with any specific factual allegations is at an imminent risk of occurring again.

While the risk of future injury does not satisfy the injury in fact requirement for standing when seeking damages, the risk of future harm can satisfy the injury in fact requirement for injunctive relief when the harm is "sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210 (citations omitted). Plaintiff has not, however, alleged that there is an imminent risk of a future data breach.

Even if Plaintiff were to establish there was an imminent risk of future injury, she failed to allege facts to support the redressability element of standing. In *Webb*, the First Circuit concluded that even though plaintiffs had standing to pursue damages because of the actual misuse of their data, they lacked standing to pursue injunctive relief. In *Webb*, "[t]he only allegation in the complaint that injunctive relief is necessary is that plaintiffs' 'PII [is] still maintained by [defendant] with [its] inadequate cybersecurity system and policies.'" 72 F.4th at 378. The court noted that an injunction requiring defendant to improve its cybersecurity system would not protect plaintiffs from future misuse of their PII. *Id*. Instead, such relief would only safeguard against a future breach. *Id*. The First Circuit then held that in the absence of any allegations that a future breach would occur, plaintiffs lacked standing to seek injunctive relief. *Id*.

As in *Webb*, Plaintiff seeks injunctive relief, but without any allegations that a future breach will occur, no less that a future breach is imminent. Plaintiff alleges a single past act and includes no factual allegations of a credible threat that R3 Education will again be attacked and breached

- 9 -

by cybercriminals. As such, she lacks standing to seek injunctive relief.

## II. Plaintiff's Complaint fails to state a claim

### A. Choice of law

Plaintiff's Complaint is silent as to what state's or states' law applies to her several causes of action. The Complaint alleges that R3 Education is headquartered in Massachusetts and that the events that gave rise to Plaintiff's claims took place in the Massachusetts. Doc. No. 1 at ¶¶ 12-13. The Complaint does not identify Plaintiff's state of residency, but in another federal data breach class action in which Ms. Dudurkaewa is a named plaintiff, she alleges that she is an Arizona resident. Ex. A, Consolidated Class Action Complaint in *Dudurkaewa v. Midfirst Bank*, No. 1: 2024-cv-10186 (D. Mass. after transfer from W.D. Okla.). As such, for purposes of this motion only, R3 Education will assume that either Arizona or Massachusetts law likely applies to Plaintiff's individual claims.

"The standard choice of law rule in diversity actions invokes application of the choice of law rules of the forum state." *In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 294, 300 (D. Mass. 2015). Under Massachusetts choice of law rules, "tort claims are governed by the law of the state in which the injury occurred, unless another state has a more significant relationship to the cause of action." *Bergin v. Dartmouth Pharm., Inc.*, 326 F. Supp. 2d 179, 183 (D. Mass. 2004) "The place where the injury occurred is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 450 N.E.2d 581, 585 (Mass. 1983) (cleaned up). "A federal court sitting in diversity need not make a finding regarding which state's law is to be applied where the case's resolution would be identical under either state's law." *Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 28 (1st Cir. 1998). Here, Plaintiff's claims fail under both Massachusetts and Arizona law.

**B.  Plaintiff fails to allege actual damages, an essential element of her negligence claim**

Under the laws of Massachusetts and Arizona, to adequately plead a negligence claim, a plaintiff must sufficiently allege facts to establish "[1] that the defendant owed the plaintiff a duty of reasonable care, [2] that the defendant breached this duty, [3] that damage resulted, and [4] that there was a causal relation between the breach of the duty and the damage." *Jupin v. Kask*, 447 Mass. 141, 849 N.E.2d 829, 834-35 (2006); *See Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2022 U.S. Dist. LEXIS 98785, at *7 (D. Ariz. June 1, 2022) (citing *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 517, 494 P.3d 572 (2021)). Plaintiff fails to adequately allege damages and thus cannot maintain her cause of action for negligence.

Massachusetts requires a measurable loss as a necessary element of a negligence claim. *Portier v. NEO Tech. Sols.*, No. 3:17-cv-30111-TSH, 2019 U.S. Dist. LEXIS 227494, at *39-40 (D. Mass. Dec. 31, 2019); *Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222, 914 N.E.2d 891, 899 (2009). Likewise, Arizona courts recognize that "[n]egligence damages must be actual and appreciable, non-speculative, and more than merely the threat of future harm." *Gannon v. Truly Nolen of Am. Inc.*, No. CV 22-428-TUC-JAS, 2023 U.S. Dist. LEXIS 181410, at *5 (D. Ariz. Aug. 31, 2023) (citing *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 176-177, 7 P.3d 979 (App. 2000)). This is consistent with other jurisdictions that have addressed the issue. *See In re: SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586 ADM/TNL, 2018 U.S. Dist. LEXIS 36944, at *11 (D. Minn. Mar. 7, 2018), *aff'd sub nom. In re: SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019) ("Data breach cases in Illinois and elsewhere have repeatedly held that a cardholder's mere allegation of an unauthorized charge, unaccompanied by an out-of-pocket loss, is not sufficient to state an actionable injury.") (citing cases); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 U.S. Dist. LEXIS 197635, at *4 (W.D. Ken.

- 11 -

Dec. 1, 2017) (no cognizable injury from the filing fraudulent tax return that IRS did not process).

Plaintiff's Complaint identifies several possible categories of purported damages, including: (1) lost time spent dealing with the consequences of the Incident; (2) an increased risk of fraud, identity theft, and misuse of her PHI/PII; (3) diminution in the value of her PHI/PII; (4) anxiety, annoyance, interference, and inconvenience; and (5) increased spam calls, texts, and/or emails. Doc. No. 1 at ¶¶ 20-23, 31. Because none of these theories, as applied to the factual allegations in the Complaint, amount to actual damages, Plaintiff's negligence claim fails.

> 1.  *Lost time, annoyance, and risk of future harm*

Plaintiff first alleges that her time spent time monitoring her accounts and her risk of future harm in the form of identity theft or fraud constitute damages. But courts have rejected lost personal time as a basis for actual damages. *Griffey*, 2022 U.S. Dist. LEXIS 98785, at *12 (under Arizona law, lost time addressing attempted fraud and increase risk of future harm were not cognizable negligence damages); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 2010 ME 93, 4 A.3d 492, 496 (Me. 2010) ("An individual's time, alone, is not legally protected from the negligence of others."); *In re GM LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 315 (S.D.N.Y. 2018) (collecting cases and rejecting argument that plaintiffs could recover for lost free time and noting that Massachusetts state courts have only recognized recovery for lost income, not lost free time). Courts have also rejected the notion that plaintiffs in a data breach case may seek damages for the increased risk of harm, as they are entirely speculative. *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) ("Negligence damages must be actual and appreciable, non-speculative, and more than merely the threat of future harm."). This is particularly the case where, as here, Plaintiff does not allege any actual misuse of her personal information.

- 12 -

2.  *Diminished Value of PII*

As discussed above, courts in this Circuit have consistently held that allegations of lost value of personal information does not amount to an injury in fact, particularly where plaintiffs "have not alleged that they attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information." *Taylor*, 2023 U.S. Dist. LEXIS 216280, at *22. Other courts agree. *See In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020) (collecting cases); *Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHX-MTL, 2023 U.S. Dist. LEXIS 131177, at *12-13 (D. Ariz. July 28, 2023) (applying Arizona law and noting that "merely alleging that PII has value in general is insufficient"). Plaintiff's Complaint contains non-specific allegations that her PHI/PII have lost value due to the breach. Like the plaintiffs in the above-cited cases, such conclusory allegations are not enough to demonstrate an actual injury.

3.  *Anxiety*

The Complaint alleges Plaintiff has suffered anxiety as a result of the Incident, but fails to allege that she suffered "physical harm manifested by objective symptomology" as required to state a claim for emotional distress under Massachusetts law. *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 181 (Mass. 1982); *See Nancy P. v. D'Amato*, 401 Mass. 516, 517 N.E.2d 824, 826 (Mass. 1988) ("[A] plaintiff may not recover for negligent infliction of emotional distress unless she has suffered physical harm."); *See also Keck v. Jackson*, 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979) ("plaintiff may not recover for negligent infliction of emotional distress unless the shock or mental anguish is accompanied by or manifested as a physical injury.").

4.  *Increased spam*

Plaintiff alleges an increase in spam related to the Incident, but Massachusetts courts have

- 13 -

held that the inconvenience caused by unsolicited communications does not qualify as actual damages, nor does it constitute a compensable invasion of privacy. *Reidy v. UMass Mem'l Med. Ctr., Inc.*, No. 2085-01101, 2021 Mass. Super. LEXIS 1660, at *5-6 (June 17, 2021) (citing *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 520, 567 N.E.2d 912 (1991) ("Telephone solicitations are an often unpleasant fact of modern life that must be faced by anyone who has a telephone and permits the telephone number to be listed in directories accessible to the general public.").

### C. Plaintiff's negligence claim is barred by the economic loss doctrine

Even if Plaintiff sustained actual damages, such damages are purely economic and thus barred by the economic loss doctrine. "[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469, 918 N.E.2d 36, 46 (2009) (citing *FMR Corp v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902 (1993) ("purely economic losses are unrecoverable in tort . . . actions")).

In *Cumis*, credit unions sued BJ's Wholesale Club, Inc. stores after a data breach in which thieves stole magnetic stripe data from credit card holders stored by defendant. *Id*. at 459. The thieves then used the data to engage in fraudulent credit card transactions. *Id*. at 459. The credit unions sued to recover costs they incurred to cancel and reissue new credit cards. *Id.* at 459-460. The trial court affirmed the dismissal of the credit unions' negligence claims based on the economic loss doctrine. *Id.* at 470. Later, the First Circuit relied on *Cumis* in upholding the dismissal of negligence claims brought by banks against TJX Companies, Inc. for a data breach under the economic loss doctrine. *In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489,

- 14 -

498 (1st Cir. 2009). Courts in other jurisdictions applying Massachusetts law have relied on *Cumis* and *TJX* in concluding that claims brought by individual consumers in data breach cases are likewise barred from recovering non-economic losses because of the economic loss doctrine. *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1174 (D. Minn. 2014).

Here, Plaintiff has not alleged physical harm. Her only alleged "property damage" is her PII/PHI's diminished value which, as addressed above, is not recognized as an actual injury.

### D. Negligence *per se* is not recognized as a cause of action

Neither Massachusetts nor Arizona courts recognize negligence *per se* as an independent cause of action. *Webb v. Injured Workers Pharmacy, LLC*, No. 22-cv-10797, 2023 U.S. Dist. LEXIS 161097, at *7 (D. Mass. Sep. 11, 2023) (citing *Lev v. Beverly Enters.-Massachusetts*, 457 Mass. 234, 245, 929 N.E.2d 303, 313 (2010)); *TJX*, 524 F. Supp. 2d at 91 n.4; *Griffey*, 562 F. Supp. 3d at 47 (applying Arizona law). Because neither Massachusetts nor Arizona recognize negligence *per se* as a cause of action, it must be dismissed.

### E. Plaintiff's breach of confidence claim is deficiently pleaded

Plaintiff cannot state a claim for breach of confidence.[1] Plaintiff does not allege that R3 Education intentionally disclosed confidential information to third parties, but rather bad actors obtained access to R3 Education's data security systems leading to the exposure of her PII. Where a defendant did not "improperly disclose[] information that it knew was confidential," a breach of confidence claim is not viable. *See Shaoguang Li v. Off. of Transcription Servs.*, 63 N.E.3d 64, (Mass. App. Ct. 2016). As such, Plaintiff's breach of confidence claim should be dismissed.

---

[1] It is unclear whether Massachusetts or Arizona recognize breach of confidence as a cause of action. Within both states it is only discussed in the context of trade secrets. *See Harvard Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161 (D. Mass. 2001); *Connors v. Howard Johnson Co.*, 30 Mass. App. Ct. 603, 571 N.E.2d 427 (1991); *Prudential Ins. Co. v. Pochiro*, 153 Ariz. 368, 371, 736 P.2d 1180, 1183 (Ct. App. 1987).

**F. Plaintiff does not allege a viable breach of fiduciary duty claim**

Plaintiff argues R3 Education owed it a fiduciary duty to safeguard her data, timely notify her of any data breach or disclosure, and maintain records of what information Defendant continues to store. Doc. No. 1 at ¶ 183. But Plaintiff has failed to allege facts to support the existence of a fiduciary relationship between Plaintiff (a student) and R3 Education (the parent company of her medical school).

"To establish a claim of breach of fiduciary duty under Massachusetts law, there must be a fiduciary duty owed to the plaintiff by the defendant and injury to the plaintiff proximately caused by the defendant's breach thereof." *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 405, 133 N.E.3d 277, 288 (2019) (cleaned up). "Fiduciary duties may arise in two ways: (a) as a matter of law, where parties to the subject relationship are cast in archetypal roles, such as trustee and beneficiary, guardian and ward, attorney and client, or (b) as determined by the facts established, upon evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters." *Id.* (cleaned up). In this case, Plaintiff alleges that a fiduciary relationship exists between Plaintiff and R3 Education because R3 Education "became the guardian" of Plaintiff's PHI/PII. This single conclusory allegation is at odds with the understanding of what constitutes a fiduciary relationship under Massachusetts law. Thus, Plaintiff has failed to allege facts that support the existence of a fiduciary duty on the part of R3 Education.

Plaintiff does not allege and there is no case law to support that a relationship between student and school is "among those traditional familiar and well-recognized relationships giving rise to fiduciary duties as a matter of law." *Id.* The opposite is true. The First Circuit, applying Massachusetts law, has held that the "relationship between student and college does not give rise to a fiduciary duty to students as a matter of law." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 66 (1st

- 16 -

Cir. 2020). Further, Plaintiff fails to allege any facts that would suggest a fiduciary relationship between R3 Education and Plaintiff, requiring dismissal of the breach of fiduciary duty claim.[2]

**G.  Plaintiff does not allege a valid breach of implied contract claim**

"In Massachusetts, a valid contract requires offer, acceptance and consideration." *Weekes v. Cohen Cleary P.C.*, No. 23-10817-NMG, 2024 U.S. Dist. LEXIS 47673, at *10-11 (D. Mass. Mar. 15, 2024). In the absence of an express agreement, an implied contract may be inferred from the conduct and relationship of the parties. *T.F. v. B.L.*, 442 Mass. 522, 813 N.E.2d 1244, 1249 (Mass. 2004). "A contract implied in fact requires the same elements as an express contract and differs only in the method of expressing mutual assent." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (citation omitted). "Plaintiff must state with 'substantial certainty' the facts that demonstrate the existence of a contract and its legal effect." *Weekes*, 2024 U.S. Dist. LEXIS 47673, at *11.

Plaintiff alleges that R3 Education "solicited and invited" her to provide her PHI/PII as part of its regular business practices. Doc. No. 1 at ¶ 172. She then alleges she "accepted Defendant's offers" and provided her PHI/PII to R3 Education. *Id*. Plaintiff then makes the conclusory allegation that by accepting her PHI/PII, R3 Education agreed to safeguard and protect her non-public information and keep it secure. *Id*.

Other courts in this District, facing similar factual allegations in the data breach context, have dismissed such implied contract causes of action. *Weekes*, 2024 U.S. Dist. LEXIS 47673, at *11; *Webb*, 2023 U.S. Dist. LEXIS 161097, at *8-9. In *Weekes*, the court dismissed plaintiff's

---

[2] Plaintiff's claim also fails under Arizona law, which distinguishes a fiduciary relationship from an arm's length relationship. *Standard Chtd. PLC v. Price Waterhouse*, 190 Ariz. 6, 24, 945 P.2d 317, 335 (Ct. App. 1996). Under Arizona law, "mere trust in another's competence or integrity does not suffice; peculiar reliance in the trustworthiness of another is required." *Id.* (internal quotations omitted).

- 17 -

implied contract claim because plaintiff's allegations were "conclusory as to the necessary element of mutual assent. and thus, are insufficient to support an implied contract claim." 2024 U.S. Dist. LEXIS 47673, at *11-12. The court explained that there were no allegations "that either party ever discussed the manner of safeguarding the PII and PHI or that plaintiff had a particular concern about disclosing that information." *Id*. Further, the court noted that the complaint did "not explain how an implied contractual relationship formed from the particular conduct of the parties." *Id*. The court in *Webb* likewise dismissed plaintiff's implied contract claim as the complaint failed to allege facts to support that defendant "agreed — explicitly or implicitly — to provide such protection." 2023 U.S. Dist. LEXIS 161097, at *8.

The reasoning in *Weekes* and *Webb* is supported by other jurisdictions that have, in the context of data breach litigation, held that the fact that plaintiffs provided defendants with PII does not alone support the inference that the parties agreed for defendants to secure this information. *See, e.g., Durgan*, 2023 U.S. Dist. LEXIS 131177, at *12-13 (applying Arizona law); *Griffey*, 562 F. Supp. 3d at 51-52 (rejecting argument that "because [defendant] did not conform to an unclear standard of data security, [defendant] must have breached the implied contracts"); *Kingen v. Warner Norcross + Judd LLP*, No. 1:22-cv-01126, 2023 U.S. Dist. LEXIS 222175, at *16 (W.D. Mich. Sep. 28, 2023) (dismissing implied contract claim where plaintiffs alleged that in exchange for PII defendant agreed to protect their PII); *Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.*, 2023 U.S. Dist. LEXIS 35347, at *14 (D. Mont. Mar. 2, 2023) (providing PII as part of hiring process does not equate to implied contract to prevent data breach).

Here, Plaintiff's Complaint suffers the same deficiencies as in *Weekes* and *Webb*. The Complaint makes the conclusory allegation that R3 Education, by accepting Plaintiff's PHI/PII, agreed to safeguard and keep secure such information. Doc. No. 1 at ¶ 173. Plaintiff's conclusory

- 18 -

allegations are not enough to state a claim for an implied contract.

**H. Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails**

A covenant of good faith and fair dealing is implicit in every contract. *See Hopkinton Friendly Serv., Inc. v. Global Cos. LLC*, 490 F. Supp. 3d 421, 427 (D. Mass. 2020); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 U.S. Dist. LEXIS 221534, at *17 (D. Ariz. Dec. 20, 2017) (applying Arizona law). The covenant of good faith and fair dealing, however, "does not give rise to an independent cause of action." *Weekes*, 2024 U.S. Dist. LEXIS 47673, at *12 (applying Massachusetts law).[3] As such, Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing must be dismissed.

Even if Massachusetts recognized the breach of the implied covenant of good faith and fair dealing, there is no implied contract between the parties concerning the protection of Plaintiff's PII/PHI. Where there is no valid contract, there can be no breach of the implied covenant of good faith and fair dealing. *Id*.

**I. Plaintiff does not viably plead that R3 Education was unjustly enriched**

To support her unjust enrichment claim, Plaintiff alleges that she conferred a monetary benefit to R3 Education when she purchased services from it. Doc. No. 1 at ¶ 194. Plaintiff then asserts that R3 Education was enriched by saving the costs it should have expended on data security measures. Doc. No. 1 at ¶ 196. But this theory was considered and rejected by the District Court in *Webb*, 2023 U.S. Dist. LEXIS 161097, at *9.

In *Webb*, plaintiffs argued that "their payments for pharmaceutical services implicitly

---

[3] Under Arizona law "[t]he implied covenant of good faith and fair dealing exists to ensure that parties do not frustrate already-existing contract terms; it does not create new ones." *Gannon*, 2023 U.S. Dist. LEXIS 181410, at *8. As such, there can be no claim for breach of the implied covenant of good faith and fair dealing absent an enforceable a contract.

included the costs entailed in the protection of their PII and that [defendant] was unjustly enriched by the difference between what plaintiffs actually paid and what plaintiffs would have paid had they known [defendant] was not taking adequate steps to secure their data." *Id.* Citing *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014), the court explained that the complaint did not allege that plaintiffs paid extra for security they did not receive. *Id.* Rather, they paid defendant for and received pharmaceutical services and did not allege they paid separately for storage of their PII. *Id.* at *11.

The *Webb* court's reasoning is in line with courts in other jurisdictions. *See, e.g., Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1068 (C.D. Ill. 2016); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1248-49 (D. Colo. 2018); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016). For instance, in *Irwin*, plaintiff, a Jimmy John's customer, filed suit after Jimmy John's was the victim of a data breach. 175 F. Supp. 3d at 1068. Plaintiff claimed Jimmy John's was unjustly enriched because it retained monies plaintiff claimed should have been spent on data security. *Id.* The court concluded that plaintiff paid for food products, not for a sandwich with a "side order of data security." *Id.* at 1072. Because data security was merely incidental to her food purchase, the court concluded Jimmy John's had not retained a benefit and dismissed plaintiff's unjust enrichment count. *Id.* As in *Webb*, *In re Target*, and *Irwin*, Plaintiff paid for and received the services she paid for and does not allege that she paid separately for the storage of her PII. The Court should adopt the reasoning in *Webb*, *In re Target*, *Irwin*, and other courts that have faced these same allegations and dismiss Plaintiff's unjust enrichment claim.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed for lack of standing or, in addition or in the alternative, for failure to state a claim.

## <ins>REQUEST FOR ORAL ARGUMENT</ins>

The Defendant respectfully requests that the Court hear oral argument on this Motion.

Dated: June 5, 2024

Respectfully submitted,

<u>/s/ Roy W. Bjorlin</u>
Roy W. Bjorlin
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
260 Franklin Street, 14th Floor
Boston, MA 02110
Tel.: (617) 422-5300
roy.bjorlin@wilsonelser.com

David M. Ross, *pro hac vice motion to be filed*
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
1500 K Street, NW, Suite 330
Washington, DC 20005
Tel.: (202) 626-7687
david.ross@wilsonelser.com

*Attorneys for Defendant R3 Education Inc.*

- 21 -

## <u>LOCAL RULE 7.1(a)(2) CERTIFICATION</u>

The undersigned certifies that counsel have conferred and attempted in good faith to resolve or narrow the issues raised in this motion.

*/s/ Roy W. Bjorlin*
Roy W. Bjorlin

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 5, 2024, a true and correct copy of the foregoing document and attachment was served upon all counsel of record via the CM/ECF system.

*/s/ Roy W. Bjorlin*
Roy W. Bjorlin

- 22 -

296222240v.2